IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION No. 06-285-1 |
|---|---|---|
| v. | : | CIVIL ACTION No. 10-3464 |
| KAREEM MILLHOUSE | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                      September 30, 2013

Defendant Kareem Millhouse asks this Court to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. Millhouse argues that his trial counsel was ineffective by: (1) failing to request a psychological evaluation, offer evidence of drug abuse, and pursue an insanity defense; (2) advising him to submit to DNA testing; (3) advising him to withdraw a motion to suppress his confession; (4) advising him not to testify; (5) failing to communicate with him during representation; (6) failing to request severance of the counts against him; (7) failing to object to Court imposed restitution; and (8) failing to argue an alleged immunity agreement existed. In addition to the ineffective assistance grounds, Millhouse also asserts breach of contract, violation of certain constitutional rights, violation of the Jencks Act, judicial misconduct, and lack of jurisdiction. Because the record conclusively shows Millhouse is not entitled to relief on any of these claims, his motion will be denied without an evidentiary hearing. *See United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005) (explaining no hearing is required if the record clearly resolves the merits of the § 2255 motion).

**FACTS**

On June 15, 2006, an eight-count grand jury indictment was returned against Kareem Millhouse on federal firearm and robbery charges. Counsel was appointed for Millhouse, but, on July 7, 2006, Millhouse assaulted his court-appointed attorney in a proffer room. She

1

subsequently withdrew as counsel on July 13, 2006. By July 20, 2006, new defense counsel had been appointed, and trial was continued to provide defense counsel sufficient time to become familiar with the case. To facilitate defense counsel's preparation, the government moved to exclude 60 days from the calculation under the Speedy Trial Act, which this court granted.

On September 7, 2006, a grand jury returned a superseding nine-count indictment including three counts of bank robbery, two counts of armed bank robbery, one count of Hobbs Act robbery, and three counts of using a firearm during the commission of a crime of violence. This Court held a suppression hearing on February 6, 2007, to consider Millhouse's motion to suppress certain post-arrest statements, including a confession. At the hearing, Millhouse stated on the record that he wished to withdraw his motion. Hr'g Tr. 9. His defense counsel confirmed on the record that it was Millhouse's sole decision to forgo the suppression motion, and after a colloquy with this Court, Millhouse confirmed his intent to proceed without the motion. *Id.* at 12. After a five day trial ending on March 9, 2007, a jury convicted Millhouse on all counts.

On December 3, 2007, this Court imposed a total sentence of 894 months imprisonment consisting of 210 months for the robbery offenses, followed by mandatory consecutive terms of 84, 300, and 300 months on the three charges of using a firearm during the commission of a crime of violence in violation of 18 USC § 924(c) . Full restitution was ordered for $22,097.02, along with a special assessment of $900.00, and a five-year term of supervised release. The Third Circuit affirmed Millhouse's conviction on September 29, 2009 noting the "extensive, if not altogether overwhelming, evidence of Millhouse's guilt." *United States v. Millhouse*, 346

Fed. App'x 868, 869 (3d Cir. 2009). Millhouse filed the instant § 2255 motion on July 14, 2010.[1]

**DISCUSSION**

Pursuant to 28 U.S.C. § 2255, a prisoner in federal custody may seek to have his sentence vacated, set aside, or corrected if it was imposed in violation of the Constitution or laws of the United States, or is otherwise subject to collateral attack. A defendant who seeks relief pursuant to § 2255 based on a claim of ineffective assistance of counsel must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on his ineffective assistance claim, Millhouse must show (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Id.* at 687. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and to be considered deficient, counsel's performance must have fallen below "an objective standard of reasonableness" when measured against "professional norms." *Id.* at 688-89.

To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When evaluating prejudice, the court considers "a verdict or conclusion only weakly supported by the record . . . more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696. It is also well settled that failing to raise meritless claims does not render counsel ineffective. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000). Indeed, "[i]t is only [] only the rare claim of ineffective assistance of counsel

---

[1] Millhouse filed another motion on September 13, 2010 to add two additional grounds for relief to the previously filed § 2255 motion. This opinion addresses the grounds for relief set forth in both motions.

3

that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989).

As set forth above, Millhouse predicates his ineffective assistance claim on eight separate grounds. Millhouse first argues that his counsel was ineffective in failing to investigate his drug use, mental history, or to pursue a mental incapacity defense. The record does not support his claim. Millhouse's counsel did in fact have a psychiatric evaluation conducted, from funds received by filing an ex-parte motion with this Court. The evaluating doctor reviewed Millhouse's medical and psychiatric history, along with his drug use, and concluded that Millhouse did not have any mental condition that would have precluded him from knowing what he was doing at the time of the charged crimes and knowing that his conduct was wrong. The doctor further opined that Millhouse was competent to proceed to trial and would not meet the applicable criteria for a federal insanity defense. Based on the doctor's evaluation, Millhouse's counsel did not raise an insanity or diminished capacity defense at trial. Since counsel decided not to pursue mental state defenses after due diligence and consideration, his performance was not deficient.

Nor can Millhouse show actual prejudice since his purported insanity defense was based on events that could not establish such a defense as a matter of law. He claims he was under temporary psychiatric hospitalization thirteen years prior to the events in this case, and that he overdosed on drugs thirty days prior to his arrest. However, even if these events occurred, they would not provide a reasonable basis for a jury to return a verdict of not guilty by reason of insanity.

Millhouse also asserts counsel was ineffective for advising him to submit to DNA testing, and his case was prejudiced due to trial delays necessitated by the test and analysis. The DNA

test at issue consisted of a cheek swab, which was taken pursuant to a warrant issued by this Court. Millhouse did not challenge the validity of the warrant prior to trial or in his motion, but even if he had, he would not have prevailed. *See, e.g.*, *United States v. Mitchell*, 652 F.3d 387, 416 (3d Cir. 2011) (holding that even where no warrant is present, "given arrestees' and pretrial detainees' diminished expectations of privacy in their identities and the Government's legitimate interests in the collection of DNA from these individuals . . . such collection is reasonable and does not violate the Fourth Amendment.").[2] Because Millhouse was legally required to submit to DNA testing, his counsel's advice to do so was not deficient.

The record also refutes Millhouse's allegation that DNA testing delayed his trial and thereby prejudiced him. Any delay of his trial resulted from the fact that Millhouse assaulted his previously appointed attorney in a proffer room on July 7, 2006, a crime for which he was separately charged and convicted. In light of the assault, prior counsel withdrew from the case and new counsel was appointed by this Court. The trial had to be delayed in order for new counsel to become familiar with the case, not because Millhouse was subjected to a cheek swab DNA test.

As additional grounds for his ineffective assistance claim, Millhouse attacks his counsel's alleged instruction to withdraw his suppression motion and decline to testify during his trial. The record shows Millhouse made these decisions freely and voluntarily. At the suppression hearing, this Court specifically inquired as to why Millhouse was withdrawing his motion and determined

---

[2] In his motion, Millhouse does not specify the basis upon which he believes he could challenge the DNA testing. Recent authority outside this circuit suggests that a Fifth Amendment challenge to the procedure would also not succeed. *See United States v. Reynard*, 473 F.3d 1008, 1021 (9th Cir. 2007) (holding that requiring DNA samples under the DNA Act does not violate a defendant's Fifth Amendment right against self-incrimination); *United States v. Hook*, 471 F.3d 766, 773-74 (7th Cir. 2006) (same); *United States v. Bean*, 214 F. App'x 568, 571 (6th Cir. 2007) (same).

that he voluntarily made the decision. Moreover, his defense counsel did not tell Millhouse to withdraw the motion, explained the consequences of doing so, and clearly stated on the record that it was Millhouse's independent decision to withdraw the motion. Counsel was not deficient with respect to Millhouse's decision to withdraw the motion.

Millhouse's ineffective assistance claim in connection with the suppression motion also lacks the requisite prejudice. If Millhouse had decided to pursue the motion, it is not likely that this Court would have granted it. Millhouse gave the post-arrest statements voluntarily after having received Miranda warnings and knowingly waived those rights. But even if his post-arrest statements were suppressed, overwhelming evidence of his guilt, independent of those statements, was presented during trial. For instance, four separate victims of the robberies identified Millhouse as the perpetrator of various offenses. His accomplice for three of the six robberies also identified Millhouse and testified to his involvement in the crimes. The government also presented substantial physical evidence, such as fingerprint and DNA matches found at the scenes of the crimes.

With regard to the decision whether to take the stand, defense counsel attested in an affidavit that in every case, including the present one, he leaves the decision to the client. It is not unreasonable for an attorney to leave certain important decisions to the client, particularly because "the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Therefore, counsel's performance in providing advice and leaving the decision to Millhouse was not deficient. Millhouse was also not prejudiced by the failure to testify. He has not asserted on the record, nor in his motion, that he would have testified "but for" counsel's alleged advice; even if he had, due to the

6

overwhelming amount of evidence on the record against Millhouse, including the post-arrest statement confessing to each crime, it is not reasonably likely that his testimony would have resulted in acquittal.

Next, Millhouse alleges counsel was ineffective because he failed to communicate with Millhouse adequately throughout the representation. Millhouse claims over the course of the representation, his attorney only visited him one time, never spoke on the phone, and exchanged approximately ten letters. According to counsel's declaration, however, he met with the client on several occasions prior to trial, and made several more attempts to visit Millhouse that were frustrated when Millhouse refused to comply with the prison's visitation rules. The amount of communication that occurred was sufficient to put on an adequate defense. In this Court's view, counsel was knowledgeable and effective in presenting the defense at trial. As such, even if there was deficiency in communication, there is no evidence that it prejudiced the Millhouse's case.

Lastly, Millhouse argues that his counsel was ineffective by failing to move for severance of the charged counts, failing to object to the restitution, and failing to raise the issue of an alleged immunity agreement. Each of these arguments fails, however, because counsel made reasonable decisions in consideration of the law.

The Federal Rules of Criminal Procedure allow charging multiple offenses in separate counts of a single indictment if the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Here, all nine counts in the superseding indictment are of the same or similar character, and occurred within a period of two months. They all arise from a string of robberies carried out in Philadelphia. The Third Circuit has routinely approved

of the joinder of multiple robberies. *See e.g.*, *United States v. McNeill*, 360 Fed. Appx. 363, 365 (3d Cir. 2010) (affirming denial of motion to sever three unarmed robberies from six armed robberies); *United States v. Hudgins*, 338 Fed. Appx. 150, 152-54 (3d Cir. 2009) (finding charges connected with two robberies properly joined); *United States v. Torres*, 251 Fed. Appx. 763, 763 (3d Cir. 2007) (stating ten gun point robberies of bars, grocery stores, and pizzerias were properly joined). Because the counts in this case were properly joined, the decision by defense counsel not to file a severance motion was not deficient.

The argument that counsel's decision not to object to the restitution was ineffective fails on similar grounds. Millhouse contends that since a number of the robberies were committed with a codefendant, he should not be responsible for the full amount of restitution. Where there is more than one defendant who has contributed to a loss, 18 U.S.C. § 3664(h) permits the Court to make each defendant liable for payment of full restitution. This Court imposed full restitution costs on Millhouse at sentencing, and Millhouse's counsel was correct in choosing not to object since the restitution order was authorized by federal statute.

As his final ground for an ineffective assistance claim, Millhouse alleges that he had an immunity agreement, and argues his counsel was ineffective for not raising the issue at trial. No such agreement ever existed, and thus, counsel had no legal or factual basis for objecting. The record indicates that Millhouse was arrested on May 18, 2006, and was subsequently questioned by the FBI. In a statement for the FBI, Millhouse wrote: "I am cooperating with the FBI because I am sorry and I want to make things right. I will cooperate with the government in any way that I can." Trial Ex. 70, Question 76. Millhouse made no mention of any immunity agreement at that time, and there was no prosecutor present to offer him an agreement.

Further, the special agent questioning Millhouse testified at the suppression hearing that no promises were made in exchange for his cooperation, but did tell Millhouse that his cooperation would be made known to the prosecutor. The agent confirmed this statement at trial during cross-examination, asserting that he told Millhouse that FBI agents could not make any promises. Even if he had attempted to make an agreement, FBI agents do not have the authority to grant immunity from prosecution. *See United States v. Flemmi*, 225 F.3d 78, 86 (1st Cir. 2000). Thus, if an immunity agreement existed it would be legally invalid, and defense counsel was not ineffective for failing to raise the issue.

In connection with the same alleged agreement, Millhouse also raises a breach of contract claim against the government, but because the record does not support the contention that any agreement existed, this claim will also be dismissed. Milhouse's breach of contract claim and all his remaining claims should be dismissed for another reason: He failed to raise them before the judgment became final, and he did not raise them on appeal. Having shown no cause for his failure to raise those claims in a timely manner, each is procedurally barred. *United States v. Frady*, 456 U.S. 152, 167 (1982); *see also Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'") (internal citations omitted)). Nevertheless, the merits of each are addressed below.

Millhouse claims his Fifth Amendment rights were violated because when he was arrested because he was under the influence of alcohol, marijuana, and cocaine, which impaired his faculties. This too is belied by the record. Millhouse confirmed in his written statement that he was not under the influence of any drugs or alcohol. Trial Ex. 70 Question 71. The special

agent who questioned him also confirmed that Millhouse was lucid during the interview. In any event, assuming Millhouse is challenging the voluntariness of this statement, his challenge must fail because he knowingly withdrew his suppression motion in front of this Court at a hearing before trial. He therefore waived any constitutional challenge he may have had in this regard. As discussed above, when Millhouse withdrew his motion to suppress the statement, this Court conducted an inquiry into his decision. Upon questioning at the suppression hearing, Millhouse maintained that it was his voluntary choice not to challenge the statement's admissibility.

Millhouse's Due Process claim, predicated on the approximately thirty-hour delay between his arrest and his presentation to a magistrate, cannot succeed because the delay does not amount to conduct that violated "fundamental fairness" or represented a shock to a "universal sense of justice." *See United States v. Russell*, 411 U.S. 423, 432 (1973); *see also United States v. Colburn*, 401 Fed. App'x 706, 708 (3d Cir. 2010) (holding 21 day delay in presenting defendant on a federal warrant did not violate Due Process).

Millhouse also claims a violation of the Jencks Act, alleging he "never saw, reviewed nor received grand jury minutes nor [sic] Jencks material despite numerous requests." Motion at 13. His Jencks Act claim has no factual basis. Under the Jencks Act, the government must, upon request, and after the witness has testified, "produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). Here, Jencks material was shared with defense counsel, and according to counsel's declaration, he reviewed all the material with Millhouse before trial. Since the government complied with its requirements under the Jencks Act, Millhouse's claim would be properly denied even if not procedurally barred.

Millhouse next claims judicial misconduct, alleging this Court ordered an illegal sentence under 18 USC § 924 and abused its discretion by denying pro se motions for the recusal of his attorney. Both of these arguments are meritless. On December 3, 2007, this Court imposed a total sentence of 894 months imprisonment. This consisted of 210 months for the robbery offenses, followed by mandatory consecutive terms of 84, 300, and 300 months on the three § 924(c) charges. At sentencing, Millhouse, through his defense counsel, agreed that he was subject to the full 57-year sentence. He did not raise any issue regarding the sentence before the judgment became final, neither in this Court nor on appeal. In the instant motion, he has stated no cause for his failure to raise it.

Moreover, the Third Circuit has held that sentences in multiple § 924(c) counts of conviction in the same case are to run consecutively. *See United States v. Walker*, 473 F.3d 71, 85 (3d Cir. 2007) (affirming a consecutive 55-year sentence for convictions on three § 924(c) counts); *see also* 18 U.S.C. § 924(c)(1)(D)(ii) ("No term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person . . . imposed for the crime of violence . . . during which the firearm was used, carried or possessed."). The jury convicted Millhouse of three counts in violation of § 924(c) in connection with the use of a firearm in a robbery and the sentence was appropriate as a matter of law.

Turning to his other judicial misconduct claim, Millhouse asserts that this Court abused its discretion by denying his pro se motions for recusal of his attorney. Millhouse filed his first motion for recusal on December 14, 2007. This Court dismissed the motion on February 5, 2008, without prejudice, noting that counsel could appropriately refile the motion. *See U.S. v. Essig*, 10 F.3d 968, 973 (3d Cir. 1993) (holding "[i]ssues that counseled parties attempt to raise *pro se* need not be considered"). Defense counsel did not refile a motion at any time. Instead,

Millhouse refiled pro se motions on July 10, 2008, August 4, 2008, and February 4, 2009, requesting a ruling. His motions were denied on September 18, 2009, because Milouse's then-pending appeal removed this court of jurisdiction. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); *see also In re Merck & Co. Secs. Litig.*, 432 F.3d 261, 267 (3d Cir. 2005) ("[I]t is generally true that district courts are divested of jurisdiction—and lose the power to act—once the notice of appeal is filed . . . ."). Since this Court lacked the jurisdiction to grant relief during Millhouse's pending appeal, the Court did not abuse its discretion in denying the motions for recusal.

Finally, Millhouse claims this Court lacks jurisdiction in this case because the crimes were not committed on federal land and because the Federal Deposit Insurance Corporation did not reimburse any of the losses associated with the robberies. U.S. District Courts have jurisdiction over federal criminal offenses. 18 U.S.C. § 3231. These crimes are defined by statute, and there is no requirement they be committed on federal land. *See* 18 USC § 2113, 1951, 924(c). Section 2113 only requires that the bank be "any institution the deposits of which are insured by the Federal Deposit Insurance Corporation." 18 U.S.C. § 2113(f). This Court also has personal jurisdiction because Millhouse was arrested in this district. Thus, this Court had jurisdiction over Millhouse and the robberies for which he was convicted.

For the foregoing reasons, Millhouse's motion under 28 U.S.C. § 2255 will be denied.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.