IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | No. 06-285-1 |
| KAREEM MILLHOUSE | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                                   **November 18, 2020**

Defendant Kareem Millhouse, who is currently serving an effective life sentence of 894 months, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Millhouse seeks a reduction of his sentence to time served asserting the coronavirus disease 2019 (COVID-19) pandemic combined with his respiratory illness, cardiac disease, asthma, and hypertension, which he contends places him at an increased risk of harm from the virus, are extraordinary and compelling circumstances justifying his release. The Government opposes Millhouse's motion, citing Millhouse's medical records, which the Government contends shows that Millhouse does not suffer from a high-risk condition to warrant his release. The Government also argues Millhouse is a danger to the community which prevents his release. Because Millhouse has not presented extraordinary and compelling circumstances and he is a danger to the community, the Court will deny his motion.

**BACKGROUND**

On March 9, 2007, a jury found Millhouse guilty of nine counts arising out of his spree of six armed robberies. He was convicted of three counts of bank robbery, in violation of 18 U.S.C. § 2113; two counts of armed bank robbery, in violation of 18 U.S.C. § 2113(d); one count of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), (b)(1), (3); and three counts of using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). The Court subsequently sentenced

Millhouse to 894 months' imprisonment followed by five years of supervised release. Millhouse is serving his sentence at United States Penitentiary Coleman I in Somerville, Florida. His anticipated release date is September 22, 2079.

Throughout this year, much has changed. Due to COVID-19, a novel and highly contagious respiratory virus, the United States (and the world) has confronted a rapidly changing public health crisis that has reached the scale of a global pandemic. *See WHO characterizes COVID-19 as a pandemic*, World Health Org. (Mar. 11, 2020), https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen. The virus commonly causes fever, coughing, and shortness of breath, amongst a wide range of other symptoms. *See Watch for symptoms*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last updated May 13, 2020). To date, the virus has infected nearly 11,300,635 people in the United States and resulted in 247,834 deaths. *See Cases of Coronavirus Disease (COVID-19) in the U.S.*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated Nov. 18, 2020, 1:07 PM).

Some populations, including the elderly and immunocompromised, are at a higher risk of developing serious complications upon exposure to the virus. *See People Who Are At Higher Risk*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last updated Sept. 11, 2020). The CDC has identified people of any age who have serious underlying medical conditions as those who are also at a higher risk for severe illness. *See id.* High risk underlying medical conditions include moderate to severe asthma, chronic lung disease, serious heart conditions, severe obesity, diabetes, chronic kidney disease undergoing dialysis, liver disease, and immunocompromised conditions from cancer

treatment, smoking, bone marrow and organ transplantation, immune deficiencies, or weakening medications. *See id.*

Because COVID-19 is highly contagious and spreads primarily through person-to-person contact, its existence has dramatically affected all realms of life. Federal, state, and local public health authorities have advised certain precautions be taken to avoid exposure and prevent the spread of the virus. In most states, individuals have been directed to stay at home unless engaging in an essential activity or providing life-sustaining or government services. Individuals are also encouraged to wear face masks, avoid gathering indoors, and to socially distance themselves from others.

In light of the precautions necessary to prevent the virus' spread, COVID-19 poses a unique challenge to the prison system. *See Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last updated Oct. 21, 2020). Nevertheless, in response to the COVID-19 pandemic, the BOP has implemented several protocols to protect the health and safety of the inmates, staff, and general public from the spread of the virus. The BOP's efforts include quarantining new inmates at the facility until they are cleared, screening inmates by health services prior to placement, suspending visits, and significantly decreasing the traffic of individuals entering the facilities. *See BOP Implementing Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last updated Oct. 8, 2020).

Millhouse, who contends the BOP's efforts are insufficient, requested compassionate release from the warden of Coleman I on June 12, 2020. On June 26, 2020, the warden denied his

3

request. Millhouse then filed the instant motion for compassionate release.[1] Since filing his first motion, he has made numerous other filings including medical records, supplemental arguments, and supplemental requests for compassionate release. *See* Def.'s Supp. Exs. & Requests, ECF Nos. 237–38, 40–54, 56–64. Because each of these filings and motions seek the same relief, the Court addresses them all in this Memorandum.

The Government opposes Millhouse's motion arguing he does not present an extraordinary and compelling circumstance to justify his release. Alternatively, the Government contends Millhouse is a danger to the community which prevents his release.

**DISCUSSION**

The Court will deny Millhouse's motion because he does not present extraordinary and compelling circumstances and he is a danger to the community. Pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court may modify a term of imprisonment on the defendant's motion after the defendant has exhausted his administrative remedies. In relevant part, § 3582(c)(1) provides that a court

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

---

[1] At the time Millhouse filed his first motion for compassionate release, he had not yet requested compassionate release from the warden at Coleman I. In response, the Government contended Millhouse failed to exhaust his administrative remedies and asked the Court to deny the motion. A defendant may move for compassionate release after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). However, in response to Millhouse's supplemental motions filed in June and July, the Government appears to abandon its exhaustion argument. Therefore, because there is evidence Millhouse requested compassionate release from the warden at Coleman, the Court will address and consider Millhouse's motion and any supplemental filings in this Memorandum.

>    (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Congress, however, did not define the term "extraordinary and compelling reasons," except to state that "[r]ehabilitation . . . alone" does not suffice. 18 U.S.C. § 944(t). Rather, Congress delegated the authority to define "extraordinary and compelling reasons" to the U.S. Sentencing Commission.

Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a)," that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

Application Note 1 to § 1B1.13 enumerates three specific reasons that qualify as "extraordinary and compelling" based on the medical condition, age, or family circumstances of the defendant. U.S.S.G. § 1B1.13 n.1(A)–(C). Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)."[2] *Id.* n.1(D).

---

[2] Interpreting this application note in light of recent amendments to the compassionate release statute, a majority of the district courts that have considered the issue have concluded that a *court* (not just the BOP) may independently determine whether extraordinary and compelling reasons, other than the reasons listed in the policy statement, exist in a particular case. *See Rodriguez*, 2020 WL 1627331, at *4 (collecting cases). At the time the application note was drafted, only the Director of the BOP could move for compassionate release on an inmate's behalf. In December 2018, however, "the First Step Act amended § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release, removing the BOP's exclusive 'gatekeeper' role." *Id.* at *2. The Sentencing Commission has not updated the policy statement to account for this statutory change,

5

As noted, granting Millhouse compassionate release would require the Court to reduce his term of imprisonment from 894 months to time served, or approximately 170 months, a reduction of nearly 80 percent. To grant Millhouse's motion, the Court must find that (1) extraordinary and compelling reasons warrant the reduction, (2) Millhouse is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g), and (3) the applicable sentencing factors under 18 U.S.C. § 3553(a) warrant the reduction.[3] Millhouse has not presented extraordinary and compelling circumstances for his release and in light of his criminal history, his conduct in these charged crimes, and his prison disciplinary record, the Court is not persuaded Millhouse is not a danger to the community. The Court will thus deny his motion.

As an initial matter, the only applicable extraordinary and compelling reason here is Application Note 1(D)'s catch-all provision. Millhouse argues extraordinary and compelling reasons exist for his release due to the COVID-19 pandemic and him being a high-risk individual vulnerable to COVID-19 because of his many medical conditions.[4] The Government argues

---

and the policy statement is clearly outdated in some respects, as it continues to track the former statutory language permitting a court to reduce a term of imprisonment only "[u]pon motion of the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 & cmt. n.4. Given the changes to the statute, numerous courts have found the policy statement "does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)." *Rodriguez*, 2020 WL 1627331, at *4 (alteration in original) (citation omitted) (collecting cases). A minority of courts have found otherwise. *See id.* (collecting cases). Millhouse spends a significant portion of his reply brief arguing the Court has the authority to determine whether extraordinary and compelling reasons exist under the catch-all provision. *See* Def.'s Resp. to Gov't's Opp'n 2–24, Aug. 24, 2020, ECF No. 257. However, because the Court will deny Millhouse's motion based on his danger to the community and the § 3553(a) factors, the Court need not decide this issue. The Court will therefore assume that it has the authority to find extraordinary and compelling circumstances under the catch-all provision.

[3] The Court must also find the reduction is otherwise consistent with the policy statement. In light of its analysis of the other factors, the Court need not address this factor.

[4] In Millhouse's numerous filings, he asserts other reasons for his release including incidents in which he was placed in solitary confinement, altercations with prison officials, physical and sexual

Millhouse does not present any basis for compassionate release because the general threat of COVID-19 is not a basis for release and his medical conditions do not make him high-risk for COVID-19 and are well-controlled at the Coleman I. The Court agrees with the Government. The COVID-19 pandemic and Millhouse's claimed medical conditions do not rise to the level of extraordinary and compelling reasons justifying for his release.

At the outset, Millhouse's generalized concern regarding COVID-19 and the BOP's efforts to contain the virus are insufficient to justify compassionate release. In *United States v. Raia*, the Third Circuit held "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." 954 F.3d 594, 597 (3d Cir. 2020). As a result, Millhouse's generalized concern about COVID-19 and the BOP's efforts in containing the virus at Coleman I is insufficient by itself to justify compassionate release. The Court therefore turns to Millhouse's medical conditions to determine if he is a high risk of developing serious complications from COVID-19 creating extraordinary and compelling reasons that warrant his release.

Even when considering the COVID-19 pandemic, Millhouse's medical conditions, including respiratory illness, cardiac disease, asthma, and hypertension, do not present extraordinary and compelling reasons for his release. The Center for Disease Control (CDC) lists the medical conditions that are high risk for severe illness from COVID-19. Not one of Millhouse's claimed conditions is on the CDC's high-risk list. To the extent Millhouse alleges generic cardiac disease and respiratory illness, his medical records do not support his claim. And regardless, the

---

violence from other inmates, and allegations of abuse from prison officials. This motion, to effectively reduce his effective life sentence to 170 months' imprisonment, is not the avenue for him to pursue relief for his concerns about prison conditions.

CDC only categorizes heart conditions such as heart failure, coronary artery disease, or cardiomyopathies, as high-risk conditions. *See People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last updated Nov. 2, 2020). Millhouse does not allege any such condition.

As for his claim for asthma, the CDC only lists "moderate to severe asthma" as a condition that *might* be a risk factor for severe illness due to COVID-19. *People with Asthma*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last updated Sept. 11, 2020) ("People with moderate to severe asthma may be at higher risk of getting very sick from COVID-19."). The U.S. Department of Health and Human Services provides that moderate asthma occurs if, without treatment, any of the following are true:

- Symptoms occur daily;
- Inhaled short-acting asthma medication is used every day;
- Symptoms interfere with daily activities;
- Nighttime symptoms occur more than 1 time a week, but do not happen every night; or
- Lung function tests are abnormal (more than 60% to less than 80% of the expected value).

*Asthma Care Quick Reference Guide*, U.S. Dep't of Health and Human Servs. (Sept. 2012), https://www.nhlbi.nih.gov/sites/default/files/media/docs/12-5075.pdf. Where an inmate presents symptoms of moderate asthma, courts have found the condition is an extraordinary and compelling reason justifying release in light of COVID-19. *See, e.g.*, *United States v. Hernandez*, No. 18-834, 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) (granting compassionate release to inmate with "moderate to severe" asthma).

Here, however, Millhouse does not present symptoms of moderate asthma and therefore his condition does not rise to extraordinary and compelling circumstances warranting his release. Based on his medical records, Millhouse does not require daily asthma medication, his symptoms do not interfere with daily activities, and his lung function tests appear normal. *See* Supp. Exs. 2, Aug. 10, 2020, ECF No. 254 (stating Millhouse uses an inhaler "a couple times a week"). Millhouse was issued a rescue Albuterol inhaler by the BOP. The prescription for this inhaler specifically stated that it should *not* be used on a daily basis but for isolated attacks as necessary. *See id.* at 4. Also, Millhouse's lung function tests appear normal. Millhouse's medical records indicate he receives a Wright Peak Flow test, which measures an individual's maximum rate of exhalation, regularly during his clinical encounters with BOP medical providers. His effort for this test is typically recorded as "fair" or "good," suggesting his asthma is controlled and he is not having abnormal air flow issues. *See, e.g.*, Supp. Exs. 3, 5, 27. A review of the clinical encounters shows Millhouse subjectively reported that his asthma is controlled and that he is "[d]oing well on current albuterol. Needs only occasionally and worse when hot and humid." *See id.* at 13.

Given the foregoing, it appears that Millhouse experiences mild, heat or humidity-induced asthma, which is not a risk factor for severe illness due to COVID-19. His asthma also appears to be well-controlled at Coleman I where he regularly receives refills for his inhaler and has made no other complaints regarding his breathing. As a result, Millhouse's asthma and the COVID-19 pandemic are not extraordinary and compelling circumstances warranting his release at this time. *See, e.g.*, *United States v. Zehner*, No. 19-485, 2020 WL 1892188, at *2–3 (S.D.N.Y. Apr. 15, 2020) (denying compassionate release for defendant with asthma where the defendant presented no symptoms of the disease and was in reasonably good health).

Regardless of whether Millhouse presents extraordinary and compelling circumstances to consider his release, the Court finds him a danger to the community, preventing his release as well. Section 3142(g) sets out the factors courts must consider including "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). All of these factors weigh in favor of finding Millhouse a danger to the community.

First, Millhouse's offenses included six robberies, three of them armed in which he brandished a firearm including one in which he fired a round. In the other three robberies, although Millhouse did not produce a firearm, he did tell victims that he had a gun. This conduct shows Millhouse engaged in conduct that presents a significant danger to the community. In addition to these robberies, Millhouse is also serving his sentence for his convictions arising from an incident in which he threatened and assaulted his court-appointed attorney with a razor blade in a proffer room. *See United States v. Millhouse*, No. 06-397 (E.D. Pa. filed July 7, 2006). These convictions also show Millhouse's dangerousness.

As for Millhouse's history and characteristics, Millhouse's disciplinary record in prison and criminal history suggest he is a danger to the community. According to the Government's records, Millhouse has accrued 69 disciplinary infractions during his incarceration including conduct for fighting, possessing a weapon, destroying property, and sexual acts. The most recent infraction occurred in February 2018 for possessing a dangerous weapon. Also, Millhouse has a significant criminal history including convictions for aggravated assault and several charges for stolen property and robbery. Millhouse's history and characteristics also show that he engages in

10

dangerous and criminal activity while he is released on parole or probation. In fact, Millhouse committed the offenses in this case while he was on escape status and less than two years from his release to a halfway house. At the time of his sentencing, Millhouse yielded 18 criminal history points, placing him in the highest criminal history category. And importantly, Millhouse has only served approximately 14 years of his 894-month sentence. With the amount of disciplinary infractions he has incurred thus far, his incarceration has not proven to have any deterrent effect on his prohibitive conduct. This factor thus weighs in favor of finding him a danger to the community. *See United States v. Daniels*, No. 15-127, 2020 WL 4674125, at *4 (E.D. Pa. Aug. 12, 2020) (finding defendant continued to pose a danger to the community in light of his extensive criminal history record).

Finally, the nature and seriousness of the danger Millhouse poses should he be released suggests compassionate release is inappropriate. Millhouse appears to engage in dangerous conduct including weapons, assault, and firearms. He also tends to engage in this conduct with anyone, as evidenced by his robberies and assaults at the banks and store, his assault on his own attorney, and disciplinary infractions which included sexual acts against female prison staff and a psychologist. This dangerousness is particularly serious to consider should Millhouse be released. As a result, Millhouse poses a danger to the community and the Court will deny his motion for compassionate release on this basis as well. *See United States v. Slone*, No. 16-400, 2020 WL 3542196, at *8 (E.D. Pa. June 30, 2020) (denying compassionate release because defendant was a danger to the community in light of his criminal history, continued disciplinary infractions while incarcerated, and the early stage of his sentence).

**CONCLUSION**

In sum, because Millhouse has failed to demonstrate extraordinary and compelling reasons warranting his release, and he continues to be a danger to the community, the Court will deny his motion for compassionate release pursuant to § 3582(C)(1)(A).

An appropriate order follows.

BY THE COURT:

 /s/  Juan R. Sánchez
Juan R. Sánchez, C.J.